**FOR PUBLICATION**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------------x
In re

JOHN CLEMENTE,                                              Chapter 7

Debtor.                                                     Case No.: 08-10812 (MBK)
-----------------------------------------------------------------x

**APPEARANCES:**

Timothy P. Neumann, Esq.
Broege, Nuemann, Fischer & Shaver, LLC
Old Squan Plaza
25 Abe Voorhees Drive
Manasquan, NJ 08736
Attorney for Debtor, John Clemente

James G. Aaron, Esq.
Ansell Zaro Grimm & Aaron, PC
1500 Lawrence Avenue
CN7807
Ocean, NJ 07712
Attorney for Creditor, Linda Clemente

Fran B. Steele, Esq.
U.S. Department of Justice
Office of the US Trustee
One Newark Center
Suite 2100
Newark, NJ 07102-5504

Dale E. Barney, Esq.
Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Attorney for State Court Receiver, Kevin J. McKenna, Esq.

_____

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM DECISION**

This matter comes before the Court on the Debtor's motion to convert his Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code (the "Code").[1] The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court, dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) & (O). For the reasons set forth below, the motion to convert is granted.

**BACKGROUND AND PROCEDURAL HISTORY**

On January 17, 2008, Dr. John Clemente, the debtor in this bankruptcy case, filed for voluntary bankruptcy relief under Chapter 11 of the Code. Dr. Clemente is a physician, duly licensed by the State of New Jersey, specializing in cardiovascular medicine and surgery. He practices medicine as the president and 100% owner of The Heart Centre, P.C. The erstwhile Chapter 11 case was filed to adjourn a sheriff sale and preserve the real property of one of the locations of The Heart Centre.

In addition, before filing the petition, Dr. Clemente was the appellant in a matrimonial matter appealing the judgment of his divorce, which awarded 100% ownership of the marital home to Linda Clemente (the Debtor's ex-spouse) and adjudicated other issues of equitable distribution. Dr. Clemente received stay relief to pursue his appeal, but to no avail: the Superior Court of New Jersey, Appellate Division, affirmed the lower court's decision, and the New Jersey Supreme Court denied his petition for certification of review. With the matrimonial

---

[1] Absent contrary indication, all "Code," chapter, and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 as amended by the Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005 ("BAPCPA"), Pub. L. 109–08, 119 Stat. 23. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "FRCP" and "FRE" references are to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, respectively.

proceedings finalized, Dr. Clemente was expected to continue making domestic support payments to Linda Clemente. As the Debtor's bankruptcy case advanced, however, Dr. Clemente was untimely with these payments. Needless to say, remnants from the matrimonial case powdered their way over the bankruptcy case, thereby impinging negotiations and ultimately the reorganization process.

Another factor straining on this reorganization was Dr. Clemente's shortcomings as the debtor in possession. Initially, an examiner was appointed in the case to ensure that the Debtor accurately accounted for and separated his personal finances from those of The Heart Centre. Yet, the examiner's appointment was not enough, and in April, 2009, after finding cause under § 1104(a) of the Code, the Court entered an order directing for the appointment of a Chapter 11 trustee. The appointment of the Chapter 11 trustee came during Dr. Clemente's attempt to garner approval of his disclosure statement and confirm his proposed plan of reorganization. His efforts were resisted by multiple objections from various creditors (including Linda Clemente), and the appointment of the Chapter 11 trustee added to his struggle. In a manifest stratagem to attain leverage in settlement negotiations and his reorganization efforts, the Debtor moved to convert his case from Chapter 11 to Chapter 7.

The Debtor, however, hit a statutory roadblock. No longer serving as debtor in possession, Dr. Clemente lost his authority, pursuant to a strict reading under § 1112(a)(1) to initiate the motion to convert. Moreover, pursuant to § 1115(a)(2) and § 541, Dr. Clemente's post-petition earnings remained property of the estate for use in funding his reorganization plan. Upon assessing his situation, the Debtor realized that he was between the Charybdis of § 1115 and the Scylla of § 1112, with possible constitutional implications: the Code required Dr. Clemente to commit his future earnings to pay back his creditors, but the Code also—coupled

with the appointment of the Chapter 11 trustee—eliminated Dr. Clemente's ability to retreat from his commitment, which thereby, as argued by the Debtor, kept him captive in Chapter 11 as an indentured servant. The Court now turns its attention to that tension.

**DISCUSSION**

Chapter 13 Bankruptcy Relief and Pre-BAPCPA Chapter 11

The Thirteenth Amendment to the Constitution prohibits slavery and involuntary servitude.[2] Peonage, a subset of involuntary servitude, is "the status or condition of compulsory service, based upon the indebtedness of the peon to the master." *Clyatt v. United States*, 197 U.S. 207, 215–16 (1905). The Thirteenth Amendment is triggered when a "law or force compels performance or a continuation of service." *Id. See also Bailey v. Alabama*, 219 U.S. 219, 242 (1911) (The "essence [of peonage] is compulsory service in payment of a debt. A peon is one who is compelled to work for his creditor until his debt is paid."). In bankruptcy law, a Chapter 13 debtor with regular income must commit her projected disposable income to the funding of the plan of reorganization. 11 U.S.C. § 1322(a)(1) (debtor's plan shall "provide for the submission of all or such portion of future earnings or other future income . . . necessary for the execution of the plan"). One might suspect, then, that § 1322 runs afoul to the Thirteenth Amendment in that it is "compulsory service in payment of a debt."[3]

---

[2] "Neither slavery nor involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. CONST. amend. XIII, § 1.

[3] Compelling a debtor to work to repay a creditor, or control over a chapter 13 debtor's post-petition earnings, has long elicited fears of involuntary servitude. Take, for example, a well-known statement from *Local Loan Co. v. Hunt*, 292 U.S. 234, 245 (1934):

> When a person assigns future wages, he, in effect, pledges his future earning power. The power of the individual to earn a living for himself and those dependent upon him is in the nature of a personal liberty quite as much as, if not more than, it is a property right. To preserve its free exercise is of the utmost importance, not only because it is a fundamental private necessity, but

- 4 -

In fact, Congress was cognizant of such involuntary servitude implications raised by requiring a debtor to work for the benefit of creditors. *See* H. Rep. No. 95-595, at 120 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6080, 6081. *See* S. Rep. No. 95-989, at 32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5818. *See generally* Robert J. Keach, *Dead Man Filing Redux: Is the New Individual Chapter Eleven Unconstitutional?*, 13 AM. BANKR. INST. L. REV. 483 (2005) (raising credible constitutional concerns regarding BAPCPA's changes to Chapter 11). To address these concerns and alleviate potential constitutional violations, Congress included certain "safety valves" for Chapter 13 debtors. For example, Chapter 13 is strictly voluntary and a debtor, with minor exception, has an absolute right to convert or dismiss the case whenever desired. 11 U.S.C. §§ 303(a), 1307(a). Moreover, no creditor may convert a debtor's ongoing bankruptcy case into Chapter 13, nor may a Creditor file a Chapter 13 plan on behalf of a debtor. 11 U.S.C. § 1321. These safety valves presumably save the Chapter 13 reorganization scheme from violating the Thirteenth Amendment. *See In re Noonan*, 17 B.R. 793, 799–800 (Bankr. S.D.N.Y. 1982); Erwin Chemerinsky, *Constitutional Issues Posed in the Bankruptcy Abuse and Consumer Protection Act* of 2005, 79 Am. Bankr. L.J. 571, 586–88 (2005).

Prior to BAPCPA, Chapter 13 was the only chapter in the Bankruptcy Code to include a debtor's post-petition earnings as property of the estate. Chapter 11 did not require a debtor to use future income to fund the plan of reorganization. Both involuntary Chapter 11 and 13 filings also were not permitted by the Bankruptcy Code pre-BAPCPA. Although a debtor's future earnings were not a component for Chapter 11, reorganization under this chapter was available to individuals. 11 U.S.C. § 109; *Toibb v. Radoff*, 501 U.S. 157 (1991).

---

because it is a matter of great public concern. From the viewpoint of the wage earner there is little difference between not earning at all and earning wholly for a creditor. Pauperism may be the necessary result of either.

In *Toibb*, the Supreme Court of the United States held that an individual debtor not engaged in business was eligible to reorganize under Chapter 11 of the Code. The Supreme Court reached this holding by way of the plain language of the Code. In dicta, though, the Supreme Court addressed an argument concerning the fear of having creditors force debtors into Chapter 11 against a debtor's will, contrary to the intent of Congress, and perhaps in contravention of the Thirteenth Amendment. *Id.* at 165. By comparing the Chapter 13 process to that of an individual Chapter 11, the Supreme Court rejected the argument that its holding might run contrary to the constitutional ban on involuntary servitude, stating:

> [T]he argument overlooks Congress' primary concern about a debtor's being forced into bankruptcy under Chapter 13: that such a debtor, whose future wages are not exempt from the bankruptcy estate, § 1322(a)(1), would be compelled to toil for the benefit of creditors in violation of the Thirteenth Amendment's involuntary servitude prohibition. *Because there is no comparable provision in Chapter 11 requiring a debtor to pay future wages to a creditor, Congress' concern about imposing involuntary servitude on a Chapter 13 debtor is not relevant to a Chapter 11 reorganization.*

*Id.* at 165–66 (emphasis added). BAPCPA now includes § 1115(a)(2), which serves as the "comparable provision" to § 1322. Section 1115(a)(2) includes, as property of the estate, a Chapter 11 debtor's future wages. Under BAPCPA, an individual Chapter 11 bankruptcy is more akin to that of Chapter 13, but, significantly, without the precautionary safety valves.

Tension between Sections 1112(a)(1) and 1115(a)(2)

The earnings requirement of § 1115(a)(2) normally would not be a problem. A Chapter 11 debtor's earnings would be used to fund the plan, and, should the debtor's situation change, she could elect to convert or dismiss the case pursuant to § 1112. In that sense, there is no element of compulsion and thus no constitutional implication. When placed in conjunction with

§ 1112, however, the Code prohibits a debtor from converting the case when, among other things, a Chapter 11 trustee has been appointed previously. Furthermore, dismissal is not always an absolute right as it is in Chapter 13. In this regard, § 1112 will not allow a bankruptcy court to grant the dismissal of a Chapter 11 case when circumstances establish that dismissal is not in the best interests of creditors or the estate.[4]  11 U.S.C. § 1112(b)(1). All the while, a debtor's future earnings remain property of the estate and to be employed for the repayment of creditors. These tensions are at play in the present case.

Dr. Clemente is no longer the debtor in possession; a Chapter 11 trustee has been appointed, which nullifies the Debtor's standing to bring the conversion motion. Alternatively, the Court cannot dismiss this case, because dismissal certainly is not in best interest of creditors or the estate. Thus, at this point, Dr. Clemente is confined in bankruptcy until either his Chapter 11 trustee decides to move for conversion (unlikely) or his plan of reorganization is confirmed (difficult due to the numerous points in objection). Dr. Clemente is squeezed further by the application of § 1115. Dr. Clemente is compelled to use his post-petition earnings from individual services to fund his Chapter 11 plan, with no available route of escape. Notably, in light of Dr. Clemente's substantial unsecured debt, he cannot qualify as a debtor under Chapter 13 pursuant to the debt limits imposed under § 109(e). Chapter 11 is his only option, and if unable to convert to a liquidation proceeding under Chapter 7, he would be forced to work for his creditors in breach of his freedoms guaranteed by the Thirteenth Amendment.

Dr. Clemente's motion to convert his case to Chapter 7 was greeted with opposition from various parties in interest.[5]  Initially, the motion was opposed because Dr. Clemente lacked standing under § 1112(a)(1). Dr. Clemente submitted a supplement a supplemental response to

---

[4] Indeed, the Court envisions few, if any, situations where it would be in the estate's best interests to have dismissal of a case, as opposed to benefitting from five-years worth of a debtor's future income.
[5] During oral arguments, Linda Clemente withdrew her opposition to the motion to convert.

the opposition, contending before the Court that the interplay between the two sections has the effect of placing him in involuntary servitude. Creditors opposing that supplemental response argued that no constitutional issue could exist, because Dr. Clemente voluntarily filed for bankruptcy protection.

Before espousing its reasons for granting the motion, the Court notes that simply filing for voluntary bankruptcy does not waive a debtor's Thirteenth Amendment right against involuntary servitude. A debtor must not be forced with the choice of either gaining a "fresh start" through bankruptcy relief or becoming an indentured servant to creditors. *See Robertson v. Baldwin*, 165 U.S. 275 (1897); *Clyatt v. United States*, 197 U.S. 207, (1905); *Bailey v. Alabama*, 219 U.S. 219, 242 (1911). *See also* Margaret Howard, *Symposium: The Mystery of the Success of Delaware Law: Article: Bankruptcy Bondage*, 2009 U. ILL. L. REV. 191, 209–14 (2009). In addition, the changes BAPCPA made to the Code eliminate the availability of choices under which bankruptcy chapters a debtor may file. Indeed, as the case at bar shows, the Debtor's only "choice" is Chapter 11, which forces him to submit post-petition earnings to funding of plan. Additionally, constitutional rights are not easily deemed waived. *Buhl v. Cooksey*, 233 F.3d 783, 789–90 (3d Cir. 2000) (stating in Sixth Amendment contexts that the "waiver of a constitutional right must be voluntary, knowing and intelligent" and that courts should "indulge every reasonable presumption against a waiver" of constitutional rights). Therefore, Dr. Clemente did not waive his constitutional rights in voluntarily choosing to file for bankruptcy relief.

The Court is faced with the task of harmonizing the opposing provisions with the Constitution, and carrying out the provisions of the Bankruptcy Code to maximize the Debtor's bankruptcy estate and to benefit his creditors. The Debtor has urged the Court to rule on the constitutionality of one or both of these sections. Under the doctrine of constitutional avoidance,

however, the Court finds that it may adjudicate the matter without having to address the constitutional issues.[6]

The Doctrine of Constitutional Avoidance

Throughout the development of constitutional law, the Supreme Court of the United States has crafted justiciability doctrines and canons of statutory interpretation for federal courts to carry out their constitutional and prudential responsibilities. Due to the "great gravity and delicacy in passing upon the validity of an act of Congress," *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 345–48 (1936) (Brandeis J., concurring), in addition to concerns over the sensitive power of judicial review, the doctrine of constitutionality avoidance emerged. That doctrine sets forth the policy that "[w]hen the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that [federal courts] first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62 (1932). As Chief Justice Hughes wrote: "The cardinal principle of statutory construction is to save and not to destroy [a statute]." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30 (1937).

A commonly cited explanation of the doctrine of constitutional avoidance appears in *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568 (1988) (internal citations removed):

> "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, [federal courts] will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress. This cardinal principle has its roots in Chief Justice Marshall's opinion for the

---

[6] The Court notes that although the Debtor called into question the constitutionality of a federal statute, the Debtor did not comply with FED. R. BANKR. P. 9005.1 (incorporating FED. R. CIV. P. 5.1), which requires notice to the Attorney General and certification by the Court under 28 U.S.C. § 2403. Because the Court is adjudicating the matter without reaching the constitutional question, compliance with the newly enacted Rule is not required.

> Court in *Murray v. The Charming Betsy*, and has for so long been applied by this Court that it is beyond debate. As was stated in *Hooper v. California*, 'the elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.' This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it."

In this regard, because the interplay between sections 1112 and 1115 can be construed to correspond to the intent of Congress and to avoid serious constitution problems, the Court has a duty to interpret the statute as such. For that, the Court turns to its resolution of the motion to convert.

Resolution

To avoid an interpretation of §§ 1112 and 1115 contrary to the Constitution, the Court infers from the Debtor's motion to convert a request to terminate the trustee for the limited purpose of converting the case to Chapter 7. Under this approach, pursuant to § 1105, the Court first terminates the Chapter 11 trustee and restores the Debtor to possession and management of the estate, and then immediately converts the Debtor's case to a Chapter 7 proceeding. Section 1105 provides the Court with the mechanism for terminating Dr. Clemente's Chapter 11 trustee's appointment.[7] Although § 1105 speaks in terms of a party in interest bringing the request, the Court is ordained with the equitable power under § 105(a) "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C § 105(a). That paragraph further states, "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any

---

[7] "At any time before confirmation of a plan, on request of a party in interest of the United States trustee, and after notice and a hearing, the court may terminate the trustee's appointment and restore the debtor to possession and management of the property of the estate and of operation of the debtor's business." 11 U.S.C. § 1105.

- 10 -

action" regarding court orders, rules, abuse of process, or carrying out the provisions of the Code. *Id.*

By implication, Dr. Clemente's motion seeking conversion of his case included a request to terminate the appointment of his Chapter 11 trustee. During the Court's hearing of this matter, all objections to the motion to convert were withdrawn, and counsel for the Chapter 11 trustee was present. Having met the requirements of § 1112, the Court grants the Debtor's motion to convert the case to Chapter 7. As the Debtor is thus a Chapter 7 debtor, a Chapter 7 trustee is immediately appointed to oversee the progress of the case.[8]

**CONCLUSION**

The Court concludes that the doctrine of constitutional avoidance requires it to interpret the provisions of the Bankruptcy Code in harmony with the Constitution, because an alternate construction that saves the statute and avoids a constitutional question is available. By exercising its equitable power and inferring a request by Dr. Clemente to terminate the Chapter 11 trustee, for the limited purpose of bringing the motion to convert, the Court has supplied the Debtor with an available escape from a possible state of peonage. The Court notes for clarity that its decision does not mean that a bankruptcy court can liberally recognize such requests by Chapter 11 debtors stripped of possession and management of the estate. In this matter and with these applied facts, constitutional and prudential concerns have guided the Court to its decision. In future cases, where constitutional law and equity are not at issue, the Chapter 11 trustee might immediately file an opposition to such requests to terminate the trustee's appointment.

---

[8] After the hearing on this motion, the Court entered its order, notified the U.S. Trustee of the entry, and the U.S. Trustee appointed Barry Frost, the former Chapter 11 trustee, as Chapter 7 trustee. This expedited process allowed for both a seamless transfer of authority, and permitted Dr. Clemente to resume operations at The Heart Centre.

Conversion is in the best interest of the creditors and the estate. First, all of Dr. Clemente's domestic support obligations must still be paid during his Chapter 7 liquidation and beyond. Second, a Chapter 7 trustee was appointed the moment after terminating the Chapter 11 trustee, thus preserving the status quo and oversight in Dr. Clemente's bankruptcy. The Chapter 7 trustee will ensure that Dr. Clemente's bankruptcy schedules and disclosures are consistent with provisions of the Bankruptcy Code. Last, by interpreting the Code to avoid a constitutional conflict, this matter will not be further delayed insofar as the constitutional question is no longer at issue. The motion to convert is granted.

Dated: June 9, 2009

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge